IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD GOMEZ, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 5353 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ARKEMA, INC., f/k/a Atofina Chemicals, Inc.. | ) | |
| f/k/a Elf Atochem North America, Inc., f/k/a | ) | |
| Atochem North America, f/k/a Pennwalt | ) | |
| Corporation, f/k/a Pennsalt Corporation | ) | |
| STOKES, F.J. CORPORATION, a/k/a F.J. Stokes | ) | |
| Corporation, STOKES, F.J. MACHINE | ) | |
| COMPANY, a/ka F.J. Stokes Machine Company, | ) | |
| F.J.S. CORPORATION, STOKES EQUIPMENT | ) | |
| COMPANY, INC., STOKES EQUIPMENT | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ricardo Gomez sued defendants Arkema, Inc., F.J. Stokes Corporation, and F.J. Stokes Machine Company, alleging negligence and strict products liability. Defendants have moved pursuant to Fed. R. Civ. P. 56 for summary judgment, arguing in part that plaintiff's claims are barred by the products liability statute of repose, 735 ILCS 5/13-213, and the construction statute of repose, 735 ILCS 5/13-214. Plaintiff subsequently also moved for summary judgment, arguing that both statutes of repose are unconstitutional. For the reasons stated below, plaintiff's motion for summary judgment is denied, and defendants' motion for summary judgment is granted.

## BACKGROUND

On August 7, 2007, plaintiff, an employee of Georgia Nut, was cleaning a vacuum tunnel machine that Georgia Nut uses in the production of malted milk balls. Plaintiff reached his hand

into the vacuum tunnel to push down accumulated debris, but the machine had not been turned off. The airlock paddle caught plaintiff's hand, and his index and middle fingers were amputated. Defendants were either involved in the manufacture of this vacuum tunnel or have retained liability for the injuries that it causes.

Between roughly 1955 and 1960, FJ Stokes manufactured the vacuum tunnel and then sold it to an unknown buyer. In 1963, Pennsalt Chemicals Corporation bought the assets and liabilities of FJ Stokes. Pennsalt changed its name to Pennwalt Corporation and sold the assets of the Stokes Division to Stokes Vacuum, Inc. Pennwalt retained the liabilities for machines shipped before September 1, 1988. Through a series of name changes, Pennwalt became Arkema.

After the initial sale, the vacuum tunnel passed through a series of owners. Then, in about 1993, Georgia Nut purchased the machine from Candy USA. The vacuum tunnel facilitates the puffing and hardening of the malted milk ball centers by sending them along a conveyor in a controlled atmosphere. The vacuum tunnel is connected to the malted milk ball production system by a bucket conveyor that feeds the ball centers to the vacuum tunnel and a rotating regulating conveyor that discharges them. The vacuum tunnel is eighty-feet-long and has not been moved since Georgia Nut purchased and installed it.

Plaintiff sued defendants in 2008, alleging both negligence and strict liability claims against each defendant. All of plaintiff's claims are based on the vacuum tunnel's alleged defects. These include: the absence of an interlock or automatic shutoff; the inadequacy of the guarding; and the insufficiency of the warnings and the instructions. Defendants filed a third

2

party complaint against Georgia Nut. Georgia Nut settled with plaintiff for $125,000 and was dismissed.

## DISCUSSION

Plaintiff and defendants have both moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The movant bears the burden of establishing both elements, Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990), and all reasonable inferences are drawn in favor of the non-movant, Jones v. Illinois Bell Tel. Co., 2013 WL 5781814, at *3 (N.D. Ill. Oct. 24, 2013) (citing Fisher v. Transco Services-Milwaukee Inc., 979 F.2d 1239, 1242 (7th Cir. 1992)). If the movant satisfies the burden, then the non-movant must set forth specific facts showing there is a genuine issue for trial. Nitz v. Craig, 2013 WL 593851, at *2 (N.D. Ill. Feb. 12, 2013). In doing so, the movant cannot simply show that there is some metaphysical doubt as to the material facts. Pignato v. Givaudan Flavors Corp., 2013 WL 995157, at *2 (N.D. Ill. Mar. 13, 2013) (citing Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

In support of their motion for summary judgment, defendants argue in part that plaintiff's claims are barred by the products liability statute of repose, 735 ILCS 5/13-213, and the construction statute of repose, 735 ILCS 5/13-214. Plaintiff argues in support of his motion for summary judgment that both statutes of repose are unconstitutional.[1] Plaintiff's motion will be addressed first.

---

[1] The parties have raised additional arguments that, in light of the court's decision, are unnecessary to address.

Statutes of repose are substantive statutes that extinguish a right to bring a cause of action regardless of whether it has accrued. Cornet v. Gromann Service Company-Retail, 590 N.E.2d 1013, 1015 (Ill. App. Ct. 1992) (citing Highland v. Bracken, 560 N.E.2d 406 (Ill. App. Ct. 1990)). The products liability statute of repose bars strict liability claims that arise more than twelve years "from the date of first sale, lease or delivery of possession by a seller or [ten] years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller." 735 ILCS 5/13-213 (b); Landry v. Keene Corp., 811 F. Supp. 367, 372 (N.D. Ill. 1993). The construction statute of repose, which covers improvements to real property, bars all claims that arise more than ten years after the installation of an improvement. 735 ILCS 5/13-214 (b).

Plaintiff argues that the two statutes of repose are special legislation that violate both the Illinois Constitution's and the United States Constitution's "guarantees of due process, equal protection, access to the courts, complete and certain remedy, and the right to trial by jury." Plaintiff is incorrect.

"[A] strong presumption of constitutionality attaches to legislative enactments." Apex Oil Co., Inc. v. Metro. Water Reclamation Dist. of Greater Chicago, 2006 WL 566451, at *10 (N.D. Ill. Mar. 3, 2006) (quoting Rose v. Pucinski, 746 N.E.2d 800, 804 (Ill. App. Ct. 2001)). A party who challenges the constitutionality of a statute "bears the heavy burden of clearly establishing the violation alleged." Id. (quoting Rose, 746 N.E.2d at 804).

Plaintiff relies on two arguments to overcome this burden. Plaintiff first argues that the insurance crisis that motivated the adoption of the statutes of repose has ended. Plaintiff attempts to prove this fact by citing several sources, including a 1983 New Hampshire case, an

article from the Asian Journal, and a 2001 Department of Justice study of 75 counties, only two of which are in Illinois.

Plaintiff has not provided sufficient evidence to conclude much of anything about the insurance market in Illinois. Even if plaintiff's evidence were sufficient to raise a question about whether the statutes of repose still represent the best policy choice, that would be insufficient to support his position because all reasonable doubts are resolved in favor of the validity of a statute. Adcock v. Montgomery Elevator Co., 654 N.E.2d 631, 635 (Ill. App. Ct. 1995) (citing People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc., 500 N.E.2d 34 (Ill. 1986)). Further, the court will not "substitute its judgment for that of the state legislature as to matters within the realm of the legislature's discretion." Kline v. J. I. Case Co., 520 F. Supp. 564, 565 (N.D. Ill. 1981) (quoting Wall & Ochs, Inc. v. Grasso, 469 F. Supp. 1088, 1092 (D. Conn. 1979)). Where the legislature is exercising its discretion, the courts will interfere only if a chosen classification "is clearly unreasonable and palpably arbitrary." Adcock, 654 N.E.2d at 635 (citing Skinner, 500 N.E.2d 34). Plaintiff's evidence is wholly insufficient to meet such a demanding standard.

Plaintiff next argues that the court should strike down the statutes of repose because "[n]umerous courts from around the country have struck down similar statutes[.]" In support, plaintiff cites one Illinois Supreme Court opinion and roughly a half-dozen cases from foreign jurisdictions.

Plaintiff's cases are insufficient to overturn the extensive body of jurisprudence upholding the constitutionality of the two statutes of repose at issue. All of the opinions cited by plaintiff dealt with different statutes of repose. All of the cases except for the one Illinois

5

opinion dealt with different state constitutions. The lone Illinois case held that a prior version of the construction statute of repose was unconstitutional because it unreasonably distinguished between parties based on their professional status, not their activity. Skinner v. Anderson, 231 N.E.2d 588, 591 (Ill. 1967). Subsequently, the legislature re-drafted the construction statute of repose specifically to avoid the problem identified by Skinner. Ryan v. Commonwealth Edison Co., 885 N.E.2d 544, 551 (Ill. App. Ct. 2008). The protections of the current version of the statute are now based on activity. Id. at 550. For these reasons, plaintiff's reliance on those cases is misplaced.

Further, Illinois courts have repeatedly upheld the constitutionality of both statutes of repose at issue. The products liability statute of repose has survived both federal and state constitutional challenges. See, e.g., Batory v. Milwaukee Elec. Tool Corp., 1993 WL 532418, at *3 (N.D. Ill. Dec. 16, 1993) (rejecting equal protection challenges under both the United States and Illinois constitutions); Delnick v. Outboard Marine Corp., 555 N.E.2d 84, 90 (Ill. App. Ct. 1990) (declining to follow foreign jurisdiction cases and upholding the constitutionality of the statute of repose); Costello v. Unarco Indus., Inc., 473 N.E.2d 96, 101 (Ill. App. Ct. 1984) rev'd on other grounds, 490 N.E.2d 675 (1986) (rejecting equal protection challenge under both the United States and Illinois constitutions); Thornton v. Mono Mfg. Co., 425 N.E.2d 522, 525, 527 (Ill. App. Ct. 1981) (rejecting a due process challenge to a prior version of the products liability statute of repose). Challenges to the construction statute of repose met the same fate. See, e.g., Adcock v, 654 N.E.2d at 636 (rejecting a challenge under the Illinois Constitution's open courts provision); Billman v. Crown-Trygg Corp., 563 N.E.2d 903, 927 (Ill. App. Ct. 1990) (rejecting equal protection challenge under both the United States and Illinois constitutions); Cross v.

Ainsworth Seed Co., 557 N.E.2d 906, 911 (1990) (rejecting a due process and an equal protection challenge under the United States Constitution); Cont'l Ins. Co. v. Walsh Const. Co. of Illinois, 524 N.E.2d 1131, 1135 (Ill. App. Ct. 1988) (rejecting an equal protection challenge under the Illinois Constitution); Skinner, 500 N.E.2d at 38 (rejecting a challenge under the Illinois Constitution's special legislation provision).

Plaintiff has provided no support to suggest that the extensive body of Illinois precedent holding that both the construction and products liability statutes of repose are constitutional is somehow incorrect. Accordingly, the court rejects plaintiff's arguments and denies his motion for summary judgment.

Turning to defendants' motion for summary judgment, they argue that the products liability and construction statutes of repose preclude plaintiff's claims. The court agrees. As a preliminary matter, the court rejects plaintiff's contention that defendants never answered the complaint and have waived the products liability statute of repose defense by failing to assert it as a defense. Plaintiff is simply wrong about the basic facts. Defendants did answer the complaint and did assert the products liability statute of repose as their fourth affirmative defense. Consequently, it was not waived.

The products liability statute of repose precludes all strict liability claims from accruing more than twelve years "from the date of first sale, lease or delivery of possession by a seller or [ten] years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller." 735 ILCS 5/13-213 (b). The statute defines a "product" as "any tangible object or goods distributed in commerce[.]" 735 ILCS 5/13-213 (a)(2). The vacuum tunnel is a

7

machine, a tangible good, and was sold to a buyer, distributed in commerce. The vacuum tunnel is clearly a "product," and plaintiff does not argue otherwise.

The second component of § 13-213 is the time requirement. Plaintiff argues that defendants must prove exactly when the vacuum tunnel was first sold. This contention, however, runs contrary to the plain meaning of the statute. The statute does not require that a specific triggering date be identified. It requires a showing that twelve years have elapsed since the date of first sale.

Defendants' uncontroverted evidence shows that this requirement has been satisfied. Three deponents testified that FJ Stokes manufactured and sold the vacuum tunnel between about 1955 and 1960. Joseph Lendino, a former salesman for Stoke Vacuum, Inc., testified in his deposition that he saw the vacuum tunnel at Georgia Nut's facility in 1992 or 1993. Neither party claims that Georgia Nut manufactured the machine. Therefore, the first sale must have been before 1993 at the latest. Plaintiff's injury occurred fourteen years later in 2007.

Because defendants have produced this evidence, plaintiff must rebut it with specific facts. Nitz, 2013 WL 593851, at *2 (N.D. Ill. Feb. 12, 2013). Instead, plaintiff argues that defendants cannot show the required time has elapsed since the first sale. Plaintiff repeatedly notes that no documentation exists to establish the date of first sale. Plaintiff also quotes the deposition of Samuel Tease, who worked for FJ Stokes when the machine was manufactured and sold. Tease said he could not identify when the vacuum tunnel was made by looking at a photograph of it. Neither of these factual points rebut defendants' evidence or affirmatively show the date of first sale occurred less than twelve years before plaintiff's injury. The products

8

liability statute of repose thus precludes plaintiff's strict liability claims because the vacuum tunnel is a product and the initial sale occurred more than twelve years before plaintiff's injury.

Defendants next argue that the construction statute of repose, § 2-214, precludes plaintiff's remaining negligence claims because the vacuum tunnel is also an improvement to real property. The construction statute of repose precludes all claims based on an act or omission in the construction of an improvement to real property where the claim arises more than ten years after the improvement's installation. 735 ILCS 5/13-214 (b). Section 13–214(b) requires a two-step analysis. Ambrosia Land Investments, LLC v. Peabody Coal Co., 521 F.3d 778, 781 (7th Cir. 2008) (citing Garrison v. Gould, Inc., 36 F.3d 588, 591 (7th Cir. 1994)). First, the court must determine whether the product is an "improvement to real property." Then, the court must determine whether defendants engaged in activities that fall within the ambit of § 13–214(b). Id.

Having found that the vacuum tunnel is a product subject to § 2-213 does not preclude a simultaneous finding that it is an improvement to real property subject to § 2-214. Under Illinois law, "the class of products and the class of improvements to real property are not mutually exclusive." Witham v. Whiting Corp., 975 F.2d 1342, 1345 (7th Cir. 1992). Rather, a product can also be an improvement to real property. Id.

An improvement to real property is "an addition to real property amounting to more than mere repair or replacement, and which substantially enhances the value of the property." Id. at 1136 (quoting Calumet Country Club v. Roberts Environmental Control Corp., 483 N.E. 2d 613, 616 (Ill. App. Ct. 1985)). The relevant criteria for determining whether an item is an improvement to real property are, "[1] whether the addition was meant to be permanent or

9

temporary, [2] whether it became an integral component of the overall system, [3] whether the value of the property was increased, and [4] whether the use of the property was enhanced." Morietta v. Reese Const. Co., 808 N.E.2d 1046, 1050 (Ill. App. Ct. 2004) (quoting St. Louis v. Rockwell Graphic Systems, Inc., 153 Ill.2d 1, 5 (1992)).

The vacuum tunnel clearly satisfies the latter two criteria: increasing the property's value and enhancing the property's uses. The vacuum tunnel helps to puff and harden malted milk ball centers. This is a valuable and useful function for a property where malted milk balls are made. Plaintiff does not contest these criteria. Plaintiff does contest the first two criteria, integration and permanence. These criteria are highly related and will be analyzed together.

Defendants argue that three factors indicate integration and permanency. First, defendants assert that the vacuum tunnel does not operate in insolation, but is integrated into a complex malted milk ball production system at Georgia Nut's facility. Second, defendants note that the vacuum tunnel has never been moved while at that facility. Third, defendants claim that the vacuum tunnel was bolted to the floor. This fact is contested. Defendants' expert witness stated in his affidavit that the machine was bolted to the floor during his 2012 inspection of the facility. Plaintiff correctly points out, though, that this inspection occurred five years after the injury.

Plaintiff offers three responsive arguments. First, plaintiff contends that the machine can be dismantled and removed without causing harm to the device or facility. Plaintiff, however, does not show or even argue that this trait is not shared by most permanent or integrated machinery. Therefore, this fact cannot be relied upon to draw the necessary distinctions. Plaintiff also claims that the vacuum tunnel is not bolted to the ground and is essentially free-

10

standing. As noted above, this fact is contested. Even if the parties agreed that the vacuum tunnel was free-standing, this would not be dispositive because machines that are not bolted down can still be improvements. See Hilliard v. Lummus Co., Inc., 834 F.2d 1352 (7th Cir. 1987) (explaining that "improvements" need not be "fixtures" and, therefore, that a machine can still be an improvement where it is not bolted or welded to concrete or steel supports). Finally, plaintiff argues that the size, weight, and immobility of the machine are not dispositive. Of course, he is correct; they are factors to be considered.

Plaintiff also places significant weight on St. Louis v. Rockwell Graphic Systems Inc., in which the plaintiff was injured by a printing press. This case does not help plaintiff, because both the trial and appellate courts found that the printing press was an "improvement to real property" covered by the construction statute of repose. Id. On appeal, the Illinois Supreme Court, addressing the issue for the first time, agreed with Hillard that an "improvement to real property need not necessarily constitute a fixture." Rockwell, 153 Ill.2d at 4. The court then adopted the Hilliard criteria for determining what constitutes an improvement, but concluded that it was "unable to determine whether the press constituted an 'improvement to real property'" because of "an insufficient factual record concerning the press and the construction modifications." Id. The court vacated the lower courts' decisions because they were unsupported by the record, and remanded the case. The court did not find that the printing press was not an improvement, however, and explicitly recognized that the lower courts' "determinations . . . could conceivably prove to be correct." Id. at 5.

Although Rockwell provides little guidance, the instant case is analogous to Hilliard, a case Rockwell cited in reaching its expansive definition of improvements. In Hilliard, the

11

plaintiff was injured by a screw conveyor that was a component of a larger cocoa processing system. The plaintiff contended that the conveyor was an ordinary, relatively small machine that could be removed without substantially damaging of decreasing the value of the plant. Hilliard, 834 F.2d at 1355. The court rejected this argument, finding that the conveyor was clearly more than a mere repair or replacement. Id. On appeal, the plaintiff relied on the fact that the conveyor was not bolted or welded to concrete or steel supports. Id. The Seventh Circuit explained that the reasonable interpretation of "improvements to real property" would include products that might be redesigned or rebuilt at some future point. Id. The court also found that "if a component is an essential or integral part of the improvement to which it belongs, then it is itself an improvement to real property." Id. at 1356. The court then concluded that the conveyor was an improvement because it was an integral part of an improvement and had never been moved since its installation. Id. at 1355-56.

In the instant case, the uncontested facts establish that the vacuum tunnel did not operate in isolation or was intended to be temporary. The machine is used in the production of malted milk balls and is integrated into a larger system. A bucket conveyor feeds malted milk ball centers to the vacuum tunnel. After traveling through the eighty-foot tunnel, the malted milk balls are discharged through rotating regulating conveyors. Also, the vacuum tunnel is large, spanning eighty feet, and has never been moved since 1993. It would be unreasonable to conclude that a large, unmoved machine that is essential to the operation of an entire system of production was intended to be temporary.[2]

---

[2] Plaintiff's reliance on Christ v. Prater Indus., Inc., 67 F. Supp.2d 491 (E.D. Pa. 1988), is misplaced. In Christ, the court determined that the "seed mixer" in question, although very
(continued...)

The court thus concludes that the vacuum tunnel is more than "a mere repair or replacement," and that it enhanced the value of Georgia Nut's property. With all four criteria pointing to the same result, the court concludes that the vacuum tunnel is an improvement to real property.

Having completed the first phase of the § 13–214(b) analysis, the court will now determine whether defendants engaged in activities that are covered by the construction statute of repose. The purpose of this statute is "to protect architects, construction companies, engineers, and the like." Witham, 975 F.2d at 1347. The statute protects people, however, based on their actions, not their statuses. Adcock, 654 N.E.2d at 634. Therefore, a manufacturer can still claim protection if it "can demonstrate its role in the construction extended beyond furnishing standard products generally available to the public." Risch v. Paul J. Krez Co., 678 N.E.2d 44, 46 (Ill. App. Ct. 1997) (quoting Illinois Masonic Medical Center v. AC & S, 640 N.E.2d 31, 35 (Ill. App. Ct. 1994)). A manufacturer can satisfy this requirement by showing either that it substantially participated in incorporating or installing the product or that it custom-designed the product for a particular project. Id. (citing People v. Asbestospray Corp., 616 N.E.2d 652 (Ill. App. Ct. 1993)); Adcock, 654 N.E.2d at 634 (quoting Blaske v. Smith & Entzeroth, Inc., 821 S.W.2d 822, 837-8 (Mo. 1991)). This latter option is satisfied where a

---

[2](...continued)
large, was not an improvement because it did not constitute a "fixture" under Pennsylvania law. Id. at 494. Illinois does not require an improvement to constitute a fixture. Rockwell, 153 Ill. 2d at 4. Durham v. Herbert Olbrich GMBH & Co. 404 F.3d 1249 (10th Cir. 2005), also provides no guidance because the test for an improvement under Oklahoma law is whether it is taxed as personalty or realty. Id. at 1252. Taxation is not a criteria under Illinois law.

defendant does not "simply pluck" the product "from its inventory and ship it," but rather "specially manufacture[s]" the product. Witham, 975 F.2d at 1347.

Plaintiff asserts, and defendants do not contest, that defendants were not substantially involved in the installation of the vacuum tunnel. Samuel Tease stated in his deposition that FJ Stokes would not install the vacuum tunnel or be present at its installation unless requested. There is no evidence that such a request was made during the installation of machine at issue. Defendants argue, though, that the statute still covers the vacuum tunnel because it was a custom product. In his deposition, Samuel Tease stated that the vacuum tunnel "wasn't stocked. It was built to order . . . [f]or whomever ordered it." He also said the vacuum tunnel orders were "one-of-a-kind." FJ Stokes did not "hav[e] the components in stock" and was not "ready to manufacture on order." Further, the vacuum tunnel could be "[d]ifferent in terms of detail" depending on who was the customer. For example, a vacuum tunnel's size depended on "how long it had to be[.]"

Plaintiff attempts to refute this testimony by quoting from another portion of Tease's deposition. Tease stated that he did not believe "design changes" were made on the vacuum and that the "standard equipment was pretty forthright." This is completely consistent with Tease's other testimony. Tease's testimony quoted in the previous paragraph explained that vacuum tunnels were specially manufactured for each customer. Here, Tease is simply saying that they were not always specially designed. It is worth noting, however, that he also said that the design could actually change if the customer requested "an extra opening or something of that type."

Even if the designs of all the vacuum tunnels shared "essential elements," the tunnels could still be custom. Snow v. Harnischfeger Corp., 12 F.3d 1154, 1158 (1st Cir. 1993).

Witham requires that the product not be placed "into the stream of commerce" or plucked from a company's "inventory and shipped." Witham, 975 F.2d at 1347. It must be "specially manufactured." Id. Tease's uncontroverted testimony clearly shows that the vacuum tunnels were specially manufactured and might even have been specially designed.

Plaintiff's last argument is that to be protected by the construction statute of repose, the product must have been customized specifically for Georgia Nut, the owner at the time of injury. This argument is contrary to the case law and illogical. Witham held that the product must be "specially manufactured," Witham, 975 F.2d at 1347, not that the customization be made for the owner at time of injury. Such a requirement would be nonsensical. A manufacturer cannot possibly customize a product for an unknown future purchaser. Further, such a requirement would create a situation where a product could oscillate between protected and non-protected status under the statute of repose. For example, a manufacturer could customize a product for Company A, who resells the product to Company B two decades later, and then purchases it back again in another decade. Under plaintiff's theory, claims would be precluded if the relevant injury occurred between years ten and twenty and years thirty and forty; but claims would not be precluded for injuries between years twenty and thirty. This result violates the plain meaning of the statute of repose by conditioning its preclusive effect on the identity of the owner. All the statute of repose requires to be applicable is that the product was "specially manufactured" for the initial purchaser, not a subsequent buyer.

Consequently, the construction statute of repose applies to preclude all of plaintiff's claims because the vacuum tunnel is a specially manufactured improvement to real property and plaintiff's claims were brought more than ten years after the installation.

## CONCLUSION

Because plaintiff's claims are precluded by both the Illinois product liability and construction statutes of repose, plaintiff's motion for summary judgment is denied, and defendants' motion for summary judgment is granted.

**ENTER:** March 12, 2014

_____
**Robert W. Gettleman
United States District Judge**